UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

RANDALL JOSEPH KNOPE,

        Petitioner,

    v.                                        Case No. 13-C-0043

UNITED STATES OF AMERICA,

        Respondent.

DECISION AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255,
DISMISSING CASE, AND DENYING CERTIFICATE OF APPEALABILITY

Randall Knope has filed a motion pursuant to 28 U.S.C. § 2255, asserting that his conviction and sentence were imposed in violation of the Constitution and that the court was without jurisdiction to impose the sentence. Knope was convicted of possession of child pornography materials and attempting to entice a minor to engage in a sexual act. He was sentenced to imprisonment and supervised release, and he is required to register as a sex offender.

The court reviewed the motion and Knope's opening brief, identifying ten grounds for relief. The screening order noted that although some of the grounds for relief could be doomed under case law or barred by procedural default, the constitutional and jurisdictional arguments warranted an answer from the United States. One observation was that Knope invoked ineffective assistance of counsel (a constitutional ground for relief under *Strickland v. Washington*, 466 U.S. 668 (1984)), faulty jury instructions (possible constitutional error under *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973), and *Falconer v. Lane*, 905 F.2d

1

1129, 1135 (7th Cir. 1990)), and insufficiency of the evidence (a possible due process violation under *Jackson v. Virginia*, 443 U.S. 307. 319 (1979)).

PROCEDURAL HISTORY

Knope took his case to trial, at which the jury found him guilty of two counts: (1) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (2) using a facility and means of interstate commerce to attempt to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). Afterward, the court sentenced Knope to 135 months of imprisonment and a lifetime of supervised release. His conviction requires that he register as a sex offender upon release.

Knope appealed, arguing that this trial court committed reversible error by (1) denying his motion to suppress statements to the police and evidence seized from his home, (2) admitting "other-acts evidence" regarding his prior online chats with individuals who purported to be minors, and (3) denying certain requested jury instructions. *See United States v. Knope*, 655 F.3d 647, 650 (7th Cir. 2011). The Seventh Circuit affirmed. Knope petitioned for a writ of certiorari but the petition was denied. *Knope v. United States*, No. 11-7569, order denying petition for writ of certiorari (Jan. 9, 2012).

Factual details of Knope's crimes are set forth in the Seventh Circuit's decision and need not be repeated here except as necessary in the discussion below to determine Knope's present motion.

DISCUSSION

Under § 2255, a criminal defendant may attack the validity of his conviction and sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the

2

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." § 2255(a). However, a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore, an issue not raised on direct appeal is barred from collateral review absent a showing of cause for the failure to raise the claims on direct appeal and prejudice resulting therefrom, or if refusal to consider the issue would lead to a fundamental miscarriage of justice. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

Notwithstanding that the court ordered the government to answer the entire motion, its response was limited to Knope's claims of ineffective assistance of counsel (counts one and six). As those counts involve the merits of some of the errors Knope asserts, the government's response does touch on some of the other grounds. To the extent that the government did not raise a defense of procedural default as to grounds two through five and seven through ten, the court considers that defense waived. Thus, the court will address the merits of Knope's claims.

Knope contends that the government conceded the claims it did not answer, suggesting that the court should grant his motion on those grounds for relief. However, mere failure by the government to respond cannot result in a victory for Knope. The court may grant relief only if the judgment was, in fact, rendered without jurisdiction or if Knope's constitutional rights were violated. § 2255(b).

Case 2:13-cv-00043-CNC   Filed 03/20/17   Page 3 of 22   Document 53

Ground One

At trial, the court permitted the government to introduce other-acts evidence under Fed. R. Evid. 404(b). On appeal, the Seventh Circuit affirmed those evidentiary rulings under Rule 404(b).[1]

Now, Knope attacks Rule 404(b) itself; he contends that the rule is "inherently unconstitutional." According to Knope, no difference exists between evidence of character and evidence of absence of mistake and the rule allows conviction based on mere predisposition to commit a crime. He argues that the exceptions in the rule allowing for use of evidence overtake the rule of inadmissibility. Further, he contends that counsel was ineffective for failing to attack the validity of Rule 404(b).

However, the Seventh Circuit has stated that "Rule 404(b) is not unconstitutional." *Harding v. Sternes*, 380 F.3d 1034, 1048 (7th Cir. 2004). This court cannot rule otherwise in light of *Harding*.[2]

To show ineffective assistance of counsel a petitioner must establish that counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the Seventh Circuit had stated years before Knope's trial in *Harding* that Rule 404(b) is constitutional, counsel was not deficient for failing to challenge the rule.

---

[1] To the extent that Knope comments that he was unfairly prejudiced by the admission of the Rule 404(b) evidence, the Seventh Circuit rejected that argument.

[2] Moreover, as pointed out by the United States, Knope's argument that the exceptions in 404(b)(2) swallow the inadmissibility rule in 404(b)(1) fails because Rule 404(b)(1) is actually an exception to Rule 402, which provides that all relevant evidence is *admissible*.

Ground Two

In ground two, Knope contends that although Congress may regulate interstate commerce, the term "commerce" means the purchase, sale, lease or exchange of commodities, and it implies a financial end. He argues that neither of his crimes had a commercial character and that Congress cannot regulate noncommercial activity even if it crosses state lines. Further, says Knope, Congress cannot regulate speech, the age of consent, or "what images a man may view for free on TV or the internet." (Doc. 3 at 3.)

Section 2252(a)(4)(B) provides that any person who

knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
    (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
    (ii) such visual depiction is of such conduct

commits a felony.

Knope's argument that § 2252(a)(4)(B) exceeds Congress's authority to regulate commerce fails based on precedent. Congress has the authority to regulate not only actual transactional instances of interstate commerce, but also the use of channels of interstate commerce and activities having a substantial relation to interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558 (1995). The defendant in *United States v. Angle* argued that intrastate possession of child pornography, like the possession of a gun in a school zone in *Lopez*, did not arise out of and was not connected with economic activity that substantially affects interstate commerce. 234 F.3d 326, 335–36 (7th Cir. 2000). The

5

Seventh Circuit rejected the argument, finding that § 2252(a)(4)(B), unlike the gun-control law in *Lopez*, was an essential part of a larger regulation of economic activity that, viewed in the aggregate, substantially affected interstate commerce. The Seventh Circuit concluded that "because § 2252(a)(4)(B) prohibits intrastate activity that is substantially related to the closely regulated interstate market of child pornography, . . . the statute is a valid exercise of Congress's Commerce Clause power." 234 F.3d at 338; *see also United States v. Blum*, 534 F.3d 608 (7th Cir. 2008) (rejecting argument that because child pornography was filmed in Wisconsin after blank videotapes traveled across state lines it was unrelated to interstate commerce), *abrogated on other grounds*, *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012).

Knope's argument that § 2422(b) exceeds Congress's authority to regulate commerce fails as well. Section 2422(b) provides that

> [w]hoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Again, Congress has the authority to regulate the use of channels of interstate commerce. *Lopez*, 514 U.S. at 558.

> The internet is an instrumentality of interstate commerce. Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact. . . . Congress may reach and prohibit the use of a telephone or the internet to set up the sexual abuse of children . . . .

6

*United States v. Hornaday*, 392 F.3d 1306, 1311 (7th Cir. 2004) (citations omitted); *see United States v. Horne*, 474 F.3d 1004 (7th Cir. 2007) (finding that the online auction site eBay was an avenue of interstate commerce and that the "Internet, which is the communication channel that people use in transacting through eBay, crosses state and indeed international boundaries"); *Godwin v. United States*, No. 3:12-cv-1387-J-32TEM, 2014 WL 7074336, *2 (M.D. Fla. Dec. 15, 2014) ("Congress' plenary power under the Commerce Clause authorizes it to prevent the injurious or harmful uses of the internet, as well as other instrumentalities or channels of interstate commerce, even where communications are not routed over state lines."); *Adams v. United States*, No. 06-cv-833-JPG, 2009 WL 2060089, *6 (S.D. Ill. July 14, 2009) (rejecting argument that use of the internet does not satisfy the interstate commerce nexus necessary to support a conviction under § 2422 ). Further, "[s]peech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime." *Hornaday*, 392 F.3d at 1311. As a result, § 2422(b) is constitutional. *See United States v. Dsouza*, No. 2:09-cr-0131 MCE CKD P, 2016 WL 6393754,*2 (E.D. Cal. Oct. 28, 2016). That the statute does not require an economic component or actual activity across state lines is immaterial.

## Ground Three

Knope argues that in his case the government failed to present evidence establishing federal jurisdiction under the statutes. According to Knope, regarding the possession count, the prior movement of the DVDs at issue across state lines did not provided a nexus with interstate commerce. And the start and finish points of his internet

7

conversations were in Wisconsin; any detour was unplanned by the parties. He argues that the evidence showed he acted only passively and intrastate, not interstate.

In *Angle* the Seventh Circuit found jurisdiction existed for the § 2252(a)(4)(B) count because the computer disks onto which Angle downloaded pornographic files had traveled in interstate commerce, even if the downloads occurred after the interstate travel ended. *See* 234 F.3d at 341. In Knope's case the same type of evidence was admitted, showing that computer hard drives and DVDs had traveled in interstate commerce. *See* R. 120 at 660–61.

Similarly, for § 2422(b) "[t]he law does not require that a defendant send a communication via the internet to a person in a different state. Rather, it is sufficient that a defendant use the internet to attempt to induce or coerce a minor to engage in unlawful sexual activity, even if the minor is in the same state as the defendant." *Godwin*, 2014 WL 7074336 at *2. Godwin e-mailed sexually explicit messages from his computer, in Florida, to an undercover law enforcement officer, also in Florida, who was posing as a 14-year-old girl. The court found that the government established a nexus with interstate commerce through testimony that the servers for the petitioner's Yahoo account were located in California, noting that even without that fact the petition would have been guilty because the internet is a facility of interstate commerce. *Id.* at *3. Here, the government similarly presented evidence that the Yahoo servers were in California and the chat room transmissions crossed state lines, even if Knope was unaware of those facts.

## Ground Four

Knope contends that his consent to search and the statements he made to detectives were obtained by use of threats and force. According to Knope, he was

8

combative and uncooperative with the officers, and sounds of him being struck were plainly heard in the recording of his custodial interrogation. Further, argues Knope, the officer sitting in the backseat of the police vehicle with him had his hand on his gun, the officers threatened him about his girlfriend, and the officers were "highly trained and motivated professionals" who "were very subtle and skillfull [sic] in thier [sic] manipulation of the situation." (Doc. 3 at 6.)

On appeal, Knope argued unsuccessfully that this court erred in admitting the post-arrest statements he made to detectives. The Seventh Circuit described the evidence from the suppression hearing as follows:

> Knope began to talk immediately after the officers approached him in the Walgreens parking lot. He stated, "I'm so stupid. Curiosity killed the cat." Knope was then arrested and placed in the back seat of the unmarked police car.[3] [Detective] DuCharme sat in the front seat, which was not separated from the back seat by a cage. Knope continued to talk to DuCharme while she set up the recording equipment for their interview. Knope stated he was upset and angry with himself, and DuCharme initially told him, "All right. I can't talk to you about it until after my partner gets here." Knope responded, "I know, I know, I'm just I'm ready [sic] to cry seriously. I can't believe I even did it. I just . . . and there's no way. I'm going to get charged with it and that's all there is to it. . . . I can't believe I did this. I can't." DuCharme explained that she and [Detective] McQuown worked for the Milwaukee Police Department and that they appreciated Knope's cooperation with the arrest. Knope continued, "When you know you're stupid, you know you're stupid . . . you screwed up. You should just realize you did something you should have slapped yourself in the head for. Somebody else shouldn't have to."

---

[3]The car was outfitted with a recording device, and the jury heard a recording of the entire interview at trial.

*United States v. Knope*, 655 3 647, 651–52 (7th Cir. 2011). The Seventh Circuit rejected Knope's argument that he was coerced into signing a form consenting to search of his residence when DuCharme told him that even if he denied them permission, she would

take other steps to accomplish a search. The court found that "the record shows that DuCharme explained Knope's rights to him in a non-threatening manner and that he readily consented to the search of his residence. The district court did not err in concluding that Knope's consent was voluntary." *Id.* at 654.

A defendant who raised an issue and had it resolved on direct appeal in federal court "cannot start from scratch on collateral review and ask the judiciary to proceed as if the first resolution had not occurred" unless a change in substantive law issues or new evidence is discovered. *Peoples v. United States*, 403 F.3d 844, 847 (7th Cir. 2005). In Knope's case, the Seventh Circuit found, on the same record before this court now, that the officers did not coerce or threaten Knope and his consent was voluntary. Therefore, the law of the case applies, even if Knope raises a new basis for the claim. *See id.* at 848 (stating that "a claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on alleged physical coercion").

Moreover, even if the law-of-the-case doctrine did not apply, Knope's claim fails on the facts. The audio recording of Knope's statements in the police vehicle was played at the evidentiary hearing and at trial. R. 28 at 17–18; R. 119 at 523–28.[3] And this court obtained the original file from the court's archives and listened to the recording and read the transcript again in connection with this decision. (*See* Evid. Hr'g Exs. 1, 1A.) Any slaps heard on the recording comport with Knope's comments regretting his actions, shortly followed his statement that he should "just realize [he] did something [he] should have

---

[3]"R." refers to the docket number of the record in the criminal case, *United States v. Knope*, No. 08-CR-199 (E.D. Wis.).

slapped [him]self in the head for" (Evid. Hr'g Ex. 1A at 2), and immediately followed his stating "God" (Evid. Hr'g Ex. 1 at 3:54, 4:14, Ex. 1A at 4, 5). DuCharme testified at both the hearing and trial that the slapping sound was Knope hitting himself. R. 28 at 12–13, 19–21; R. 120 at 604–05. And DuCharme's statement during the interview with Knope that "any time you slap your legs with your fist . . . anytime you slap your head with your fist . . . . it kind of hinks us up, okay?" also confirms that Knope was hitting himself. (Evid. Hr'g Ex. 1 at 3:54, 1A at 4.) And, as recognized by the Seventh Circuit and confirmed by this court's listening to the recording, the recording indicates that the officers acted in a nonthreatening manner and Knope was very cooperative.

Knope contends that if he was hitting himself it showed that he was irrational and emotionally unstable. The court's recollection of the trial and review of the evidence does not support any such argument. Knope's hitting himself coincided rationally with his statements of regret and being upset and embarrassed regarding his actions.

Knope argues that the lack of any video evidence suggests that the detectives interviewing him were trying to keep their brutality hidden. But the lack of video evidence does not detract from the audio evidence and testimony in the record, none of which even suggests any police brutality. And the officer's hand on his gun did not convert the interview into a situation of coercion. The evidence indicates that Knope was unhandcuffed and seated in the backseat with the officer, who reasonably could take precautions against sudden movement by Knope, especially after Knope slapped himself.

Ground Five

The prosecution's use of false evidence or failure to correct false evidence at trial constitutes a denial of due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prove

11

a violation of *Napue*, Knope must show (1) that false testimony was given at trial, (2) that the prosecution knew or should have known that the testimony was false, and (3) a likelihood that the false testimony affected the verdict. *United States v. Freeman*, 650 F.3d 673, 678 (7th Cir. 2011).

Knope contends that the prosecutors presented false testimony (1) in opening statements by saying that Knope's girlfriend could access a computer only while Knope was present, when testimony showed that she was logged into a computer while Knope was in custody; (2) in closing arguments by contending that Knope was secretive and manipulative, implying that Knope's girlfriend was a victim; and (3) in closing arguments by pointing to the physical description of the minor as being small and wearing shorts, when an adult female could be that size and dressed that way. However, the opening statements and closing arguments of the prosecutors were not evidence, and the jury was so instructed. R. 96 at 4. The jurors were free to make their own inferences and compare the prosecutors' statements or arguments to the evidence.

Especially as to the opening statement, if the evidence did not support the government's statement then the jurors could note that failure. Knope concedes that his girlfriend testified that she was allowed to use the desktop computer only when he was around (Doc. 50 at 6), notwithstanding that other evidence showed that she may have been on the computer while he was in police custody the evening of his arrest. The jury was allowed to draw whatever conclusions it believed appropriate from the evidence.

Moreover, in the court's view Knope's arguments distort the prosecutors' closing arguments, which were supported by the evidence. For example, the prosecutor did *not* contend that no adult woman could match the minor's physical or clothing description;

12

instead, the prosecutor properly argued that the purported minor's small size and clothing choice supported finding that Knope was not simply mistaken but had knowledge of the minor's age.

Further, Knope points to Detective McQuown's testimony that the last time an internet connection started was before Knope's alleged offense, when a report McQuown wrote showed Knope's girlfriend logging in on the computer two hours after Knope was arrested. As the government indicates, the purported difference in testimony was due to two different computers—a desktop and a laptop—being discussed rather than any false testimony by McQuown. *See* Doc. 121 at 806–07, 810, 824–29.

Ground Six

To show ineffective assistance of counsel a movant must establish that counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Regarding the deficiency prong, the court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable; the movant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.*

Regarding prejudice, the movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

13

*Id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id.* at 697.

Knope labels his attorneys' alleged errors as "failure to investigate." Alleged failures to investigate whether the government had jurisdiction and the purported false testimony are meritless based on the discussions above. No errors occurred, so counsel cannot have been deficient for failing to investigate the matters.

Knope contends that counsel failed to investigate or challenge the officers' testimony at trial, which would have shown the testimony to be inadmissible. However, Knope fails to identify what particular testimony he believes would have been inadmissible. Generally, as the officers were present at Knope's arrest and DuCharme was involved in the online discussions with Knope, they had personal knowledge sufficient to testify at trial.

Knope contends that counsel failed to investigate why during trial he was moved to a new facility by the U.S. Marshal, causing loss of his legal papers, lack of contact with counsel, and exposure to a jailhouse informant. However, the record shows that counsel *did* investigate the Marshal's movement of Knope during trial and acted to remedy any problems caused. R. 118 at 216–20; R. 119 at 418–20, R. 122 at 878–79. Moreover, regarding the lost legal papers, as Knope was represented by counsel at trial, counsel had access to pertinent documents and provided Knope with two files during the trial regarding the active issues. Knope fails to say how his reduced access impacted his defense, thus failing to show any prejudice.

Knope contends that counsel neglected to advise the court that the prosecution had threatened him to persuade him not to testify, then allowed him to waive his right to testify

14

and to present evidence. Nothing in the record supports Knope's claim that prosecutors threatened him, and Knope fails to provide any specificity regarding any such threat. Moreover, counsel and the court questioned Knope regarding his decision to not testify, and Knope, under oath, stated that he had not been threatened or intimidated in any way regarding that decision and that he had sufficiently discussed the matter with counsel. R. 122 at 950–52. The court found that Knope knowingly and voluntarily waived his right to testify and present evidence. R. 122 at 952.

Finally, Knope argues that his attorneys failed to move for a mistrial. However, he fails to specify any basis on which a mistrial would have been arguable.

## Ground Seven

The due process clause is violated if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the evidence presented. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In analyzing this claim, the court must view all evidence from trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 318–19. It is the responsibility of the fact finder to resolve conflicts in testimony, weigh the evidence, and draw conclusions from the evidence. *Id.* at 319. The reviewing court may set aside the fact finder's verdict on the ground of insufficient evidence only if *no* rational trier of fact could have agreed. *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012).

Regarding the possession count, Knope argues that the government had to establish a specific connection between the child-pornography images on the DVDs at issue and the internet to prove the requisite jurisdictional nexus and that the government failed to do so. Additionally, Knope contends that the government failed to show that the

15

images were bought or sold. As discussed above, Knope is wrong on the law regarding the commerce clause and jurisdictional matters. The government did not have to prove that specific images had been transmitted through the internet or other interstate means. It was enough that the government presented evidence that the DVDs had traveled in interstate commerce, even if that travel occurred prior to the download of illegal images onto the DVDs. Nor was an interstate economic transaction required regarding the images.

Further as to the possession count, Knope contends that the government failed to establish that the images contained actual minors; the images were not shown to match any databases checked by the government. However, the jurors were shown the images and concluded as a matter of fact that they depicted minors. *See* R. 99; R. 120 at 713–14. The court saw the images and recalls that they supported the jury's findings. Regardless, the court must take the evidence in the light favorable to the government and accepts the jury's findings.

As for the enticement count, Knope contends that § 2422(b) applies only to those who knowingly attempt to entice minors, not those who inadvertently speak with minors. He points out that he chatted online with "Maria" in an adult chat room called "Wisconsin Romance," that Yahoo has age requirements for that chat room, and that he was justified in believing that Maria was *pretending* to be a minor female.

Knope made all of these arguments to the jury, which rejected his explanation. And the jury's verdict was supported by sufficient evidence. For instance, as recognized by the Seventh Circuit in its decision in Knope's case, the other-acts evidence showed that Knope in the past had expressed interest in having sex with minors, attempted to meet with at

16

least one minor for that purpose, and asked for photos and phone calls from the purported minors (suggesting that he was confirming their youth and distinguishing real minors from police officers). *See* 655 F.3d at 655–57. As recognized by the Seventh Circuit, those facts undermined Knope's defense that his chats with Maria were harmless fantasy and that he actually believed she was an adult. *Id.* at 657. Further, the Seventh Circuit observed:

> there was abundant evidence of Knope's criminal intent, even without the other acts evidence. Knope initiated contact with Maria, made it clear that he was interested in having sex, and attempted to meet with her despite the fact that she stated she was a minor. His knowledge of Maria's age could be readily inferred from the fact that DuCharme sent him a photograph of a minor, spoke to him as though she were a fifteen-year-old girl, and repeatedly emphasized Maria's age during the chats. Knope's intent to have sex with Maria was also clear. He brought a strap-on device to the meeting with Maria and then purchased condoms while he waited for her. . . . Added to Knope's volunteered inculpatory statements, the evidence of guilt was overwhelming . . . .

*Id.* at 659–60. Hence, the evidence against Knope was more than sufficient regarding both counts.

Ground Eight

Knope believes that the court gave erroneous instructions for the possession count. He contends that the instructions' inclusion of the descriptions of the images inflamed the jury and misled them, the fourth element misstated the law by saying that the government did not have to establish interstate commerce, and the instructions talked about production though he was charged only with possession. Counsel raised this issue at trial. *See* R. 123 at 1004–07.

No constitutional error occurred. The descriptions of the images in the jury instructions occurred in a quotation of the indictment, which the jury would have been

17

allowed to see in the jury room. That instruction was prefaced with the following: "The Indictment in this case is the formal method of accusing the defendant of an offense and placing the defendant on trial. It is not evidence against the defendant and does not create any inference of guilt. Count One of the indictment reads . . . ." R. 96 at 13–15. Thus, the jury was clearly told that the descriptions were not evidence and were simply alleged. Further, the court notes that the file names themselves were truncated. Regarding the fourth element and production, the jury instruction regarding the elements of the possession count read that the government had to prove "[that the visual depiction had been produced using material that had been mailed, shipped, or transported in interstate or foreign commerce, by computer or other means." R. 96 at 16. Possession of one or more visual depictions of a minor engaged in sexually explicit conduct was required in the first element. The reference to production in the fourth element was part of the interstate-commerce requirement and caused no possible juror confusion between production and possession. Knope's argument regarding alleged instructional error on interstate commerce is based on his incorrect believe that the government had to show that the images themselves moved between states and is, therefore, rejected based on discussions set forth above.

Regarding the enticement count, Knope contends that the court should have given a good-faith instruction because the evidence showed that he entered an age-restricted chat room. This argument fails based on the law of the case. The Seventh Circuit determined on appeal that this court properly declined to give Knope's proposed good-faith instruction because that defense was included in the definition of "knowingly" that was given to the jury. 655 F.3d at 661.

18

Knope contends that this judge was biased in favor of the government during the entire case as shown by alleged comments at the evidentiary hearing that the court believed Knope to be guilty, use of an "invalid" case, incomplete or incorrect instructions, and amendment of the indictment for the government. According to Knope, this judge is a former prosecutor who aided the government.

Any issues regarding the propriety of case law or instructions are matters of law that Knope could have challenged on appeal, and he fails to identify which decisions or instructions support his claims of judicial bias. As for his other allegations, the court assures Knope that his days as a prosecutor were nearly over forty years ago and that he goes out of his way to ensure that both sides in every case receive a fair trial.

The court notes that for this decision, the court has considered all of Knope's filings in this case (in particular Documents 1, 3, 21, and 50), notwithstanding whether any of Knope's filings were delayed by the mail (as he expressed concern about in several letters).

Ground Ten

Though Knope discussed this ground in his motion and reply brief, he failed to mention it in his opening brief. Thus, the court could deem it waived. But in any event the claim is meritless. Knope argues that his sentence violates the double-jeopardy clause because it has three parts: imprisonment, supervision, and sex-offender registration. Further, he contends that the sentence discriminates against a particular type of first-time offender, as only sex offenders face lifetime supervision.

The double-jeopardy clause of the Fifth Amendment provides that "[no person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." It protects against punishing a defendant twice for the same crime. *United States v. Faulkner*, 793 F.3d 752, 755 (7th Cir. 2015). Knope maintains that imposition of imprisonment and supervised release punishes him twice for the same crime. However, one sentence divided into parts is not double punishment. A district court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include *as a part of the sentence* a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a)(emphasis added); *accord United States v. Wyatt*, 102 F.3d 241, 245 (7th Cir. 1996). The double-jeopardy clause ensures that the sentencing discretion of courts is confined to the limits established by the legislature. *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). The question whether punishments are impermissible double jeopardy is one of legislative intent. *Id.* And Congress has authorized one felony sentence to consist of multiple parts—imprisonment and supervised release. Hence, the double-jeopardy clause is not violated by Knope's judgment of conviction. *Accord United States v. Lee*, 84 F. Supp. 3d 7, 10 (D.D.C. 2015) (rejecting double-jeopardy challenge to imposition of a term of supervised release to follow a term of imprisonment).

With respect to alleged discrimination against sex offenders through lifetime supervised release, Knope provides no legal basis for finding that such treatment could be deemed unconstitutional. Moreover, the requirement of sex-offender registration, such monitoring has been ruled nonpunitive. *Smith v. Doe*, 538 U.S. 84, 97–106 (2003); *Belleau*

20

*v. Wall*, 811 F.3d 929, 937 (7th Cir. 2016); *Mueller v. Raemisch*, 740 F.3d 1128, 1133 (7th Cir. 2014).

CERTIFICATE OF APPEALABILITY

The court must issue or deny a certificate of appealability when it decides a § 2255 case. Rule 11, Rules Governing § 2255 Proceedings. A certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes a "substantial showing" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The certificate of appealability determination is not a second assessment of the merits. *See Miller-El*, 537 U.S. at 327, 336. Instead, the determination requires only a threshold inquiry into the debatability of the district court's decision—"an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. The petitioner need not demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003) ("[C]ertificates properly issue in many cases in which the prisoner will fail on full merits review.").

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement.

21

28 U.S.C. § 2253(c)(3); *Davis*, 349 F.3d at 1028, 1029. If the court denies the request for a certificate of appealability, it must state its reasons. Fed. R. App. P. 22(b)(1).

None of the issues raised by Knope deserves encouragement to proceed further nor is the denial of each issue debatable among jurists of reason. Many of his grounds for relief are barred by precedent; others are belied by the facts in the record or barred by the law of the case. Therefore, reasonable jurists would not find any of the grounds for relief worthy of further consideration.

CONCLUSION

To the extent that the court has not addressed some aspect of Knope's arguments, his petition is rejected. Thus,

IT IS ORDERED that Knope's § 2255 motion to vacate his conviction and sentence is denied and this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

22